CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001   Telephone: 879-1133

Doleta Starr and John Pimentel, Parents and Next Friends of JDP, Infant, et al.

*Plaintiff*

VS.

James M Chamberlain, M.D.

*Defendant*

Civil Action No. 0002463-08

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Jonathan Schochor/Kerry D. Staton
Name of Plaintiff's Attorney

1211 Saint Paul Street
Address
Baltimore, Maryland 21202

410-234-1000
Telephone

By _____
Deputy Clerk

Date 3/25/2008

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.



EXHIBIT B

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| DOLETA STARR and JOHN PIMENTEL, : <br> Parents and Next Friends of <br> JDP, Infant <br> 5108 Second Street, NW, #4 <br> Washington, DC  20011 <br>   <br> and <br>   <br> DOLETA STARR, Individually <br> 5108 Second Street, NW, #4 <br> Washington, DC  20011 <br>   <br> and <br>   <br> JOHN PIMENTEL, Individually <br> 5108 Second Street, NW, #4 <br> Washington, DC  20011 <br>   <br>       Plaintiffs <br>   <br> v. <br>   <br> JAMES M. CHAMBERLAIN, M.D. <br> 111 Michigan Avenue, N.W. <br> Washington, DC  20010 <br>   <br> and <br>   <br> SUSAN HANLEY, M.D. <br> 111 Michigan Avenue, N.W. <br> Washington, DC  20010 <br>   <br> and <br>   <br> CHILDREN'S NATIONAL <br> MEDICAL CENTER <br> 111 Michigan Avenue, N.W. <br> Washington, DC  20010 | RECEIVED <br> Civil ... Office <br> MAR 2 5 2008 <br> ... <br> District of Columbia <br> Washington, D.C. <br>   <br>   <br>   <br>   <br> 0002463-08 <br>   <br> Civil Action No.: |

```
```

Serve On Resident Agent:
C.T. Corporation System
1015 15th Street, NW, #1000
Washington, DC 20005

Defendants

## COMPLAINT

### COUNT I

#### (Medical Negligence)

1. The Plaintiffs, Doleta Starr and John Pimentel, Parents and Next Friends of JDP, Infant, by their attorneys, Jonathan Schochor, Kerry D. Staton and Schochor, Federico and Staton, P.A., sue James M. Chamberlain, M.D., Susan Hanley, M.D., and Children's National Medical Center, Defendants.

2. Jurisdiction of this Honorable Court is based upon Section 11-921, 12-101, and 16-2701 of the District of Columbia Code (1981 Ed., as amended) and by virtue of the fact that the tortious acts and omissions complained of herein occurred within the District of Columbia.

3. At all times of which the Plaintiffs complain, the Defendant Chamberlain and Hanley represented to the Plaintiffs and the public that they possessed the degree of skill, knowledge and ability possessed by reasonably competent medical practitioners, practicing under the same or similar circumstances as those involving the Infant Plaintiff.

4. The Plaintiffs allege that the Defendants Chamberlain and Hanley owed to the Plaintiffs the duty to exercise the degree of care, skill and judgment expected of a competent medical practitioner acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the nature and

2

severity of the Infant Plaintiff's condition, careful diagnosis of such condition, employment of appropriate procedures, surgery and/or treatment to correct such conditions without injury upon the Infant Plaintiff, continuous evaluation of the Infant Plaintiff's condition and the effects of such treatment, and adjustment of the course of treatment in response to such ongoing surveillance and evaluation -- all of which the Defendants failed to do.

5.  The Defendants Chamberlain and Hanley were negligent in that they failed to employ appropriate treatment, surgery, tests and/or procedures, failed to carefully and thoroughly evaluate the Infant Plaintiff's condition, failed to properly and appropriately diagnose the Infant Plaintiff's condition, failed to thoroughly evaluate the effects and results of any tests and/or procedures performed, failed to properly evaluate the effects of chosen treatment, failed to adjust the Infant Plaintiff's treatment in response to appropriate evaluation of the effects of treatment, failed to properly monitor the course of the Infant Plaintiff's condition and treatment, failed to employ adequate and proper diagnostic procedures and/or tests to determine the nature and extent of the Infant Plaintiff's condition, and were otherwise negligent.

6.  The Plaintiffs allege that the Defendant Children's National Medical Center (hereinafter referred to as "Hospital"), through its agents, servants and employees, owed to the Infant Plaintiff a duty to exercise a degree of care, skill and judgment expected of a competent medical corporation acting in the same or similar circumstances, which duty included the performance of adequate and proper diagnostic tests and procedures to determine the nature and severity of the Infant Plaintiff's condition, careful diagnosis of such condition, employment of appropriate procedures, tests, surgery and/or treatment to correct such conditions without inflicting injury upon the Infant Plaintiff, continuous evaluation of the Infant Plaintiff's condition

3

and effects of such treatment, and the adjustment of the course of treatment in response to ongoing surveillance and evaluation -- all of which the Defendant Hospital failed to do.

7. The Defendant Hospital, through its agents, servants and/or employees, was negligent in that it failed to employ appropriate treatment, surgery and/or procedures, failed to carefully and thoroughly evaluate the Infant Plaintiff's condition, failed to thoroughly evaluate the effects and results of any tests, treatment and/or procedures performed, failed to adjust the Infant Plaintiff's treatment in response to appropriate evaluation of the effects of treatment, failed to properly monitor the course of the Infant Plaintiff's condition and treatment, failed to employ adequate and proper diagnostic procedures and/or tests to determine the nature and extent of the Infant Plaintiff's condition, failed to diagnose the Infant Plaintiff's condition and was otherwise negligent. At all times referred to herein, the Defendants Chamberlain and Hanley acted on their own behalf as well as duly authorized agents and/or employees of the Defendant Hospital, as were other health care professionals, acting within the scope of their authority.

8. As the direct and proximate result of the negligence of these Defendants and each of them, the Infant Plaintiff suffered unending physical pain, emotional anguish, fear and anxiety, ultimately culminating in severe and permanent brain injury, which is more fully described, hereinbelow.

9. At 10:30 a.m. on March 26, 2004, the Infant Plaintiff (age 7 months) presented with his mother to the Defendant Hospital's emergency department. His mother reported two days of significant diarrhea, the fact that the baby could not sit up for a matter of days, and fever in the range of 102°F to 104°F. She further explained that she had been administering Tylenol, but that the baby had not responded. At the time of triage, the Infant Plaintiff was noted to have

4

a rectal temperature of 104.72°F, a pulse of 130, a respiratory rate of 28, and a blood pressure of 98/47. Further, the triage nurse noted liquidy-yellow stool and administered Tylenol.

10. After waiting three hours, the Infant Plaintiff was finally examined by an emergency department physician. The physician noted the history of fever as well as the present fever. Further, the Infant Plaintiff's mother indicated that the fever had increased and was accompanied by sleepiness as well as agitation.

11. Upon examination, the physicians noted that the Infant Plaintiff resisted movement of his thighs and knees bilaterally, and had a history which included the fact that the baby would not sit up. However, no neurological examination was provided, no nuchal examination was performed, and no lumbar puncture was completed -- in violation of the standards of care.

12. Blood studies were ordered which revealed a white blood cell count of 14.46 -- indicative of significant infection. Amazingly, the emergency department physician diagnosed the Infant Plaintiff with "febrile illness" -- in addition to probable bilateral hip dysplasia based on a questionable x-ray. The Infant Plaintiff was discharged to home with his mother with instructions to take Tylenol and follow-up subsequently.

13. At 9:30 p.m. on March 28, 2004, the Infant Plaintiff re-presented to the Defendant Hospital's emergency department with complaints of fever, tactile temperature, right arm and right sided trembling. His temperature was 103.82°F upon presentation to the Defendant Hospital. The examining emergency department physician was advised that there was an onset of right arm and right sided trembling and the appearance that his eyes were rolling back into his head. Upon examination, the emergency department physician noted a failure of the Infant Plaintiff's eyes to track, as well as a gazed deviation to the right and slow pupil reactivity.

Finally, a neurological examination was obtained which revealed increased tone in the extremities, and a fixed gaze. Nuchal examination was finally completed which was abnormal. As a result of these findings, the baby was belatedly admitted to the Pediatric Intensive Care Unit.

14. A subsequent work-up, including lumbar puncture, confirmed the presence of Group A streptococcus pyogenes. Subsequent enhanced CT scan of the head confirmed infarction/cerebritis of the temporal, parietal, and occipital lobes. The Infant Plaintiff was finally diagnosed with Group A strep meningitis and treated with Vancomycin until sensitivity studies were returned. At that time, treatment was changed to intravenous Penicillin. An MRI of the brain performed on April 2, 2004 confirmed extensive infarction of the cerebrum bilaterally (right greater than left), and extensive abnormal leptomeningeal enhancement -- consistent with extensive encephalitis. The ultimate diagnosis was bacterial meningitis with obvious, massive brain injury.

15. On April 26, 2004, the Infant Plaintiff was discharged from the Defendant Hospital to the Hospital for Sick Children for Level I rehabilitation. He had suffered global, massive and irreversible brain injury, requiring around-the-clock care for the remainder of his life.

16. It is alleged that the emergency department physicians and staff at the Defendant Hospital breached the applicable standards of care. When the Infant Plaintiff presented with a significantly high fever (104.72°F), bilateral resistance to movement of his lower extremities, an inability to sit up for nine days, and a white blood count approximating 15,000, the Defendant Hospital's personnel were obligated by the standards of care to rule out meningitis as an etiology of the Infant Plaintiff's presentation.

17. It is alleged that the standards of care required the Defendant to perform a neurological examination (or obtain neurological consultation), perform a nuchal examination, perform a lumbar puncture, and admit the Infant Plaintiff for intravenous antibiotic therapy pending results of the lumbar puncture. Contrary to the standards of care, none of these mandated studies and/or examinations was completed. The Defendant Hospital's personnel simply made a diagnosis of "febrile illness," and discharged the child to his home to take Tylenol, which he was taking prior to presentation with no beneficial effect.

18. It is alleged that a child with a significantly elevated temperature, elevated white blood count, resistance to movement of the lower extremities, and inability to sit up for a period of nine days, required meningitis to be ruled out through a lumbar puncture. Had that one test been completed, it would have demonstrated the presence of bacteria and confirmed the diagnosis of the meningitis from which the Infant Plaintiff suffered. Further, had the neurological examinations, including nuchal examination been completed, they likewise would have demonstrated abnormalities indicative of meningitis which would have required emergency admission and treatment.

19. Following a lumbar puncture, it is alleged that the Infant Plaintiff should have been admitted to the Pediatric Intensive Care Unit for the administration of intravenous Ceftriaxone pending return of the spinal fluid cultures. These antibiotics would have been administered prophylactically. When the cultures were returned, they would have demonstrated the presence of Strep A bacteria which would have required further inpatient treatment with continued antibiotic therapy.

20. However, as the direct and proximate result of the ongoing negligence of the Defendant Hospital's personnel, the Infant Plaintiff was deprived of any treatment whatsoever, no

meaningful diagnosis was made, and the Infant Plaintiff was simply sent home where the disease process was permitted to progress and extend to the point that he suffered the global and irreversible brain damage referred to hereinabove.

21. Had the Defendant Hospital's personnel conformed with the applicable standards of care, completed the necessary tests, studies and examinations, admitted the child for antibiotic therapy and managed the Infant Plaintiff appropriately, all of the injuries, damages and permanent disability would have been avoided. In fact, had the Defendant Hospital's personnel complied with the applicable standards of care, it is alleged that the Infant Plaintiff would have been successfully treated, and would have been returned to his home with his mother and father, with no neurological deficits whatsoever.

22. However, as the direct and proximate result of the ongoing negligence of the these Defendants, the Infant Plaintiff has been rendered severely brain injured. He will not enjoy a normal childhood, will not grow to be a productive adult, will not seek and/or hold gainful employment, will not enjoy the activities normal children and adults enjoy, will not marry and have children, will not attend normal schools, and will not become a productive member of society. Further, he will require constant, skilled medical and nursing care for his entire lifespan. In essence, it is alleged that the quality of the Infant Plaintiff's life has been destroyed through the negligence of these Defendants.

23. It is alleged that the Infant Plaintiff has in the past, is presently and will in the future continue to incur hospital, surgical, physiotherapeutic, pharmacological, nursing, custodial and other losses and expenses. Additionally, it is alleged that he has in the past, is presently and will in the future continue to suffer unending physical pain, emotional anguish as well as fear and anxiety over his condition.

24. The Plaintiffs and Infant Plaintiff refer to the negligence of these Defendants and each of them as the sole and proximate cause of all of the injuries, damages, global brain injury and disability -- with the Plaintiffs and Infant Plaintiff being in no way contributorily negligent.

WHEREFORE, the Plaintiff demands judgment against these Defendants, jointly and severally, for all damages and injuries sustained in the amount of Fifty Million Dollars ($50,000,000.00).

_____
Jonathan Schochor - No. 126102

_____
Kerry D. Staton - No. 413637

_____
Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000

Attorneys for the Plaintiffs

## COUNT II

1. Jurisdiction of this Honorable Court is based upon Section 11-921, 12-101, and 16-2701 of the District of Columbia Code (1981 Ed., as amended) and by virtue of the fact that the tortious acts and omissions complained of herein occurred within the District of Columbia.

2. The Plaintiffs, Doleta Starr and John Pimentel, by their attorneys, Jonathan Schochor, Kerry D. Staton and Schochor, Federico and Staton, P.A., sue James M. Chamberlain, M.D., Susan Hanley, M.D., and Children's National Medical Center, Defendants.

3. The Claimant incorporates in this Count those facts set forth in Count 1 hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

4. It is alleged that Doleta Starr and John Pimentel are the parents of JDP, the Infant Plaintiff.

5. As the direct and proximate result of the negligence of the Defendant Hospital's personnel, the Plaintiffs have in the past, are presently and will in the future continue to incur hospital, surgical, physiotherapeutic, pharmacological, nursing, custodial and other losses and expenses for which claim is made.

WHEREFORE, the Plaintiff demands judgment against these Defendants, jointly and severally, for all damages and injuries sustained in the amount of Thirty Million Dollars ($30,000,000.00).

Jonathan Schochor - No. 126102

Kerry D. Staton - No. 413637

Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000

Attorneys for the Plaintiffs

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

DOLETA STARR and JOHN PIMENTEL, :
Parents and Next Friends of
JDP, Infant, et al :

      Plaintiffs :

v. : Civil Action No.:

JAMES M. CHAMBERLAIN, M.D., et al :

      Defendants :

: : : : : : : : : :

### CERTIFICATION OF VALUE IN EXCESS OF $50,000.000

Pursuant to Rule II of the Rules of Mandatory Arbitration for the Superior Court of the District of Columbia, the undersigned, as counsel for the Plaintiff, hereby certify that each Count of the Complaint in this case is reasonably valued in excess of $50,000.00. In addition, there are substantial medical and related bills.

_____
Jonathan Schochor - No. 126102

_____
Kerry D. Staton - No. 413637

_____
Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000

Attorneys for the Plaintiffs

11

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

DOLETA STARR and JOHN PIMENTEL, :
Parents and Next Friends of
JDP, Infant, et al :

    Plaintiffs :

v. : Civil Action No.:

JAMES M. CHAMBERLAIN, M.D., et al :

    Defendants :

: : : : : : : : : :

### ELECTION FOR JURY TRIAL

The Plaintiffs in this case elect to try their case before a Jury of six.

_/s/ Jonathan Schochor_
Jonathan Schochor - No. 126102

_/s/ Kerry D. Staton_
Kerry D. Staton - No. 413637

_Schochor, Federico & Staton, PA_
Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000

Attorneys for the Plaintiffs